UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| : | |
| v. : | Case No. 19-cr-93 (EGS) |
| : | |
| **JOHN VICTOR REED,** : | |
| : | |
| **Defendant.** : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS TO SUPPRESS (ECF NO. 23-2)

The United States of America, by and through the United States Attorney, and Mervin A. Bourne, Jr., Assistant United States Attorney, hereby certifies that this response is filed in a timely manner.  Defendant's "Motion to Suppress Evidence" (hereinafter "Defendant's Motion") was filed and served on November 5, 2019.  *See* ECF No. 23-2.  Pursuant to the Court's Order, the Government's response is due on or before November 22, 2019.

The United States of America, by and through the United States Attorney, and Mervin A. Bourne, Jr., Assistant United States Attorney, and responds in opposition to the Motion to Suppress Evidence, seeking to suppress evidence (a firearm and drug paraphernalia) due to alleged violations of the Fourth Amendment.  Defendant is charged by way of a Criminal Indictment with one count of Felon in Possession of a Firearm and Ammunition in violation of Title 18, United States Code, Section 922(g)(1).  For the reasons enumerated herein, Defendant's Motion should be denied.

### I.   FACTS AND PROCEDURAL HISTORY

On March 11, 2019 at approximately 8:40 a.m., members of the Metropolitan Police Department (MPD) Narcotics and Special Investigations Division (NSID) Narcotics Enforcement Unit (NEU) were in the area of the 1500 block of Gales Street, NE in Washington, D.C.  Officers

were conducting an observation post in response to complaints of drug sales in the area. Officers observed multiple suspected drug users hanging around a Jeep with DC tags FJ0401 and also observed a suspected drug transaction take place outside of the Jeep. Sergeant Cardinal had received prior source information that the Jeep was involved in narcotics sales in the area.

Sergeant Cardinal stopped the Jeep while it was exiting the block. The driver and sole occupant of the Jeep was John Reed. John Reed is also the registered owner of the vehicle. During Sergeant Cardinal's interaction with Mr. Reed, Sergeant Cardinal asked Mr. Reed if it was okay to search his car, to which Mr. Reed responded, "Yeah". Officer Chaplin found a cut red straw with suspected heroin in the driver's door. Officer Chaplin then located a black backpack in the middle of the back passenger seat. Recovered from inside of the backpack was a black Taurus Millenium PT #111 9mm handgun, serial number TGX17133.

A search of the serial number of the handgun revealed that it was reported stolen from Greenville, South Carolina. The firearm was loaded with one round in the chamber and eleven rounds in the magazine, which had a maximum capacity of 17 rounds. John Reed has a prior conviction for Possession with Intent to Distribute Cocaine Base and Possession of a Firearm with an Obliterated, Removed, Changed or Altered Serial Number from the U.S. District Court for the District of Columbia, docket number 92-CR-92 (TFH) with a date of disposition of 05/03/1996.

On March 13, 2019 a federal grand jury returned a Criminal Indictment charging Defendant with one count of *Felon in Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year,* in violation of 18 U.S.C. §§ 922(g)(1).

## II.     ARGUMENT

Defendant's Motions assert that 1) the Defendant was "stopped, searched and seized without any probable cause, or based on any other legitimate exception to the warrant requirement" (Defendant's Motion, 4); 2) that Mr. Reed "never consented to the search of his car" (Id., 5). Defendant's arguments are without merit, are unsupported by the facts of this case, and thus, must fail.

### A. The Police Encounter with Defendant was a Lawful Terry Stop Supported by Reasonable Articulable Suspicion of Criminal Activity

Here, it is undisputed that the stop was initiated because the Defendant's car was seen involved in suspected drug transactions just moments prior to the defendant's car being stopped. In fact, the observations weren't a fleeting look in passing, but the product of a concerted, coordinated observation post that had been covertly set up in the vicinity of the stop. The defendant was the sole occupant and driver of the vehicle. Under these circumstances, the police had a reasonable articulable suspicion that crime was afoot, such that they could lawfully initiate a Terry stop.

For an investigative stop to be constitutional under the Fourth Amendment, a government Official must have an objectively reasonable suspicion that "criminal activity may be afoot." U.S. v. Terry, 392 U.S. at 9, 30. "[P]olice need not have a particularized suspicion of a 'specific crime,'" as "the Supreme Court 'has often spoken of the wrongdoing itself in general terms.'" United States v. Guardado, 699 F.3d 1220, 1224 (10th Cir. 2012) (quoting *United States v. Pack*, 612 F.3d 341, 356 (5th Cir. 2010)); *see also* Pack, 612 F.3d at 356 ("Requiring police to have particularized facts that support a finding that 'criminal activity may be afoot' is different from requiring the police to articulate particularized facts that support a finding that a particular specific crime is afoot.")

Neither this Court nor any other circuit, district, or state court of which the government is aware has held – or even suggested – that the Fourth Amendment require an officer to articulate a specific criminal offense he suspects is being committed, or a particular criminal statute being violated; to the contrary, courts that have considered such an argument have unanimously rejected it as contrary to Supreme Court authority. *See, e.g.* Guardado, 699 F.3d at 1224; Pack, 612 F.3d at 356; United States v. Pena-Gonzalez, 618 F App'x 195, 198 (5th Cir. 2015) ("[T]he suspicion need not relate to a particular crime; it is sufficient to have reasonable suspicion 'that criminal activity may be afoot.'"(quoting *Pack*); Baker v. Smiscik, 49 F. Supp. 3d 489, 498, 498 n.6 (E.D. Mich. 2014)("To justify a temporary detention, an officer need only have reasonable suspicion that 'crime is afoot,' i.e. criminal activity in general.") United States v. Fields, 2014 WL 5147610, at 4 (W.D. Mo. Sept. 10, 2014), report and recommendation adopted, 2014 WL 5171951 (W.D. Mo. Oct. 14, 2014) ("Officers 'need not be able to identify the specific crime the officer is investigating; rather the officer need only reasonably suspect that the individual is engaged in some kind of criminal activity.'") (quoting United States v. Noonan, 2013 WL 500828 at 4 (N.D. Iowa Feb. 11, 2013); State v. Perez-Jungo, 329 P.3d 391, 397-98 Ida. Ct. App. 2014) ("reasonable suspicion does not require a belief that any specific criminal activity is afoot to justify an investigative detention; instead, all that is required is a showing of objective and specific articulable facts giving reason to believe that the individual has been or is about to be involved in some criminal activity."); Mocek v. City of Albuquerque, 3 F. Supp. 3d 1002, 1078 (D.N.M. 2014), aff'd, 813 F. 3d 912 (10th Cir. 2015) ("[T]o establish that reasonable suspicion exists, officers have no obligation to articulate a specific offense which they believe the suspect may have committed"). The Defendant alleges there was no reasonable suspicion to stop the defendant, but a valid stop may not be challenged on the ground that it was a pretext for other investigation. *See* Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 1772-74, 135 L.Ed.2d 89 (1996).

Here, there were multiple factual justifications for a consensual contact with Defendant as well as ample reasons to *suspect* that the Defendant had either committed, or might have information useful to the investigation of a narcotics-related crime — *i.e.*, that criminal activity was "afoot"— during the course of the encounter.

**B. There Was No Evidence Obtained Subject to an Illegal Search in This Case, But Even There Was, the Evidence Would Have Inevitably Discovered**

In connection with Terry-stop, police may conduct limited search and pat-down for weapons for protection of officer investigating suspicious behavior of persons he reasonably believed to be armed and dangerous and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause. Timberlake by Timberlake v. Benton, M.D.Tenn.1992, 786 F.Supp. 676. – explain facts.

In this case, the officers had a basis to question the defendant about suspicious circumstances and activity, namely, the apparent drug transactions they had witnessed moments earlier outside of the defendant's car, and the drug paraphernalia that was seen in the defendant's car door. Notably, when asked about the straw, the defendant admitted that there would be heroin found in straw, but stated that he didn't have any on him. These facts would have constituted probable cause for an arrest, i.e., possession of drug paraphernalia, which would have inevitably led to a lawful search of the vehicle. See, Nix v. Williams, 467 U.S. 431, 444, 104 S. Ct. 2501, 2509, 81 L. Ed. 2d 377 (1984) (Court held that if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means, the evidence should be received.). Here, there is no doubt that given the totality of the circumstances of this case, that the defendant's car would have been searched, and the gun and ammunition sitting in a bag that was in plain view on the back seat would have been found by the police.

### C. The Statements the Defendant Made to Police were Voluntary, and Not the Product of an Overborne Will

The Government agrees that "A defendant's statement is inadmissible "if under the totality of the circumstances it was involuntarily obtained." United States v. Reed, 522 F.3d 354, 358–59 (D.C.Cir.2008) (citation and quotation marks omitted). Whether a statement was involuntary depends "on whether the 'defendant's will was overborne' when he gave [it]," United States v. Murdoch, 667 F.3d 1302, 1305 (D.C.Cir.2012) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

The defendant's self-incriminating statements were made voluntarily and of his own free will. He clearly responded affirmatively when asked if police could search his car, therefore, the defendant's motion to suppress evidence should be denied.

A statement is voluntary when it is a product of "an essentially free and unrestrained choice by its maker" and relevant to this determination is whether the person making the statement had his will overborne and his capacity for self-determination critically impaired. *See Culombe v. Connecticut*, 367 U.S. 568, 602 (1961); *see generally Schneckloth v. Bustamonte*, 412 U.S. 218, 223-27 (1973); *United States v. Coutchavlis*, 260 F.3d 1149, 1158 (9th Cir. 2001) (the test for voluntariness is whether, considering all the facts, the government used physical or psychological coercion or improper inducement so that the suspect's will was overborne). The government must establish the voluntariness of a suspect's statement by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *Reed*, 522 F.3d at 359.

Here, there is absolutely no evidence that the defendant's will was overborne, and the officer's body worn camera footage supports these facts. In fact, throughout the encounter, the defendant is spoken to politely and respectfully.  He is referred to by Sergeant Cardinal as "Sir", and as "this gentleman," even after he is observed participating in suspected drug transactions, and drug paraphernalia is found in his car. The officers never raise their voices at him, and never subject him to any form of physical force or abuse. The cases cited by the defense are easily distinguishable (See Defendant's Motion, 5, 6), as they involve

cases where the officer's request to search are extremely vague – as in, asking to "look around" a room- or not a request to search at all – as in asking to "go out to [defendant's] home" (Id., 6). In this case, the officer's told the defendant explicitly that they wanted to search his car, and explicitly asked him if it was okay. The defendant explicitly responded, "Yeah", and now regrets his decision in the aftermath of his arrest and subsequent criminal charge.

## CONCLUSION

The actions of the police in this case were not unreasonable under the Fourth Amendment. While the encounter started off as a *Terry* stop, it quickly developed into much more based on the ensuing investigation conducted at the scene by the police.  None of the police officers' actions unreasonably extended the duration of the encounter, or violated the defendant's rights.  Because there was no Fourth Amendment violation, the contraband found should not be suppressed. Consequently, the Defendant's arguments, and his Motion must fail.  **WHEREFORE**, The Government respectfully requests this Court deny the Defendant's Motions.

Respectfully submitted this _22nd___ day of November, 2019.

      Respectfully submitted,

      JESSIE K. LIU
      United States Attorney
      D.C. Bar No. 415793

By:   */s/ Mervin A. Bourne, Jr.*
      Mervin A. Bourne, Jr.
      DC Bar No. 490175
      U.S. Attorney's Office
      555 4th Street, N.W.
      Washington, D.C. 20530
      (202) 252-6979
      Mervin.Bourne@usdoj.gov

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that I have served a copy of this *Government's Response to Defendant's Motions To Suppress* on Counsel for the Defendant, Carlos Vanegas, Esq., via ECF filing, this _22nd_ day of November, 2019.

                                                */s/ Mervin A. Bourne, Jr.*
                                                Mervin A. Bourne, Jr.
                                                Assistant United States Attorney