IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 19-cr-00093 (EGS) |
| : | Criminal No. 18-cr-00344 (EGS) |
| : | |
| JOHN VICTOR REED, : | |
| JAROME F. SIMMONS, a.k.a. Bernard Byrd : | |
| Defendants : | |

# DECLARATION OF JOHN CRABB JR.

John Crabb Jr., being duly sworn, states the following:

## I. Declarant's Background

1. I am currently the chief of the Criminal Division of the United States Attorney's Office for the District of Columbia ("USAO"). I have been either chief, acting chief, or deputy chief of the Criminal Division, since September 2016. As such, I supervise all criminal matters brought by the USAO in the United States District Court for the District of Columbia ("district court"). I have been an assistant United States attorney since September 1995.[1]

## II. USAO Structure

2. The USAO's Criminal Division handles prosecutions, in the district court, of violations of the United States Code. One of the Criminal Division's sections, the Violent Crime and Narcotics Trafficking Section ("VCNT"), handles most firearms prosecutions brought in the district court, including violations of 18 U.S.C. § 922(g)(1).[2] The USAO's Superior Court

---

[1] This declaration is based on my personal knowledge, on discussions with present and former colleagues who were involved with the matters at issue, and consultation with FBI Division Counsel.

[2] "It shall be unlawful for any person – (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. 18 U.S.C. § 922(g)(1).

Division prosecutes, in the District of Columbia's Superior Court ("Superior Court"), violations of the D.C. Code. The D.C. Code also proscribes the possession of a firearm by a felon.[3]

### III.    Modification of USAO Approach to Prosecuting Felon-in-possession Cases

3.    In 2018, 160 homicides occurred in Washington, D.C. – a 38% increase from the prior year; and 79% of those homicides were committed with a firearm. *See* MPD Annual Report, 2018, p. 21.

4.    During the summer and fall of 2018, on several occasions, members of the community voiced their concerns about this rise in homicides to USAO leadership. Among other things, members of the community asked the USAO to more aggressively prosecute firearms offenses.

5.    In response to this rise in homicides and the community's concerns, in the latter half of 2018, the USAO and our local and federal law enforcement partners strategized ways to attempt to lower the homicide rate in the District of Columbia. The USAO leadership had numerous discussions with the chief of the Metropolitan Police Department (MPD), Peter Newsham, about more effective ways to combat violent crime and specifically the prosecution of firearms cases.

6.    Chief Newsham thought that it might deter violence if the USAO prosecuted more firearms cases in the district court. Of late, the USAO had brought the majority of such prosecutions in the Superior Court. For example: in 2017, 22 "stand alone" § 922(g)(1) cases were filed in the district court and 175 "stand alone" felon-in-possession cases were filed in Superior Court; in 2018, 45 "stand alone" § 922(g)(1) cases were filed in the district court and 249

---

[3]   "No person shall own or keep a firearm, or have a firearm in his or her possession or under his or her control, within the District of Columbia, if the person: Has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . ." D.C. Code § 22-4503(a)(1).

"stand alone" felon-in-possession cases were filed in the Superior Court. As the top local law enforcement officer for the District of Columbia, Chief Newsham acted as the liaison between the D.C. government and the USAO on this issue. As a result of these discussions with Chief Newsham, the USAO decided to prosecute more violations of § 922(g). This approach was consistent with the Justice Department's priorities for reducing violent crime.

7.  In addition to the deterrent effect identified by Chief Newsham, a number of other benefits arose from prosecuting more felon-in-possession cases in district court. First, for the most part, such cases are handled by more experienced prosecutors. Additionally, charging U.S. Code violations, enhances our ability to leverage more federal law enforcement resources. Because of resource constraints, MPD is unable to thoroughly investigate most felon-in-possession arrests. Involving federal law enforcement makes it feasible to conduct more extensive investigations of these cases, such as conducting forensic tests, searching for relevant surveillance video, and interviewing witnesses. Such investigation makes for stronger cases and permits nonmeritorious cases to be more quickly dismissed.

8.  The Federal Bureau of Investigation ("FBI"), however, cannot investigate D.C. Code violations except for the small curtilage around the FBI's headquarters and Washington Field Office. FBI policies and federal statutes prohibit the FBI from investigating state crimes, unless the FBI has specialized expertise that the local authorities do not normally possess. In which case, FBI executive management can approve the use of FBI assets in support of a local investigation. Nevertheless, the FBI would still need to have a predicated, federal case open before providing assistance in any other matter under investigation. When it becomes apparent that no federal offense has been, is being, or will be committed, and if there is no other basis of authority for the FBI to continue its assistance, the FBI must withdraw promptly from any state investigation. In

other words, the FBI presumptively investigates violations of the U.S. Code, and FBI cases are presumptively charged in district court. Accordingly, to secure FBI assistance investigating felon-in-possession cases, the USAO needed to prosecute such matters in district court.

9. As part of modifying the approach to prosecuting felon-in-possession cases, the USAO had intended to prosecute all felon-in-possession cases that constitute a violation of § 922(g) in the district court. It was not, however, feasible to do so. Accordingly, it was ultimately determined that the greatest impact would result from focusing on the MPD districts that had the highest instances of violent crime. In 2018, MPD Districts 5, 6, and 7 had the highest rates of violent crime, in general, and of homicides, in particular. Of the 4,127 violent crimes reported districtwide, 2,317 were in MPD Districts 5, 6, and 7, that is, over 56% of violent crimes occurred in these three MPD Districts. Of the 160 homicides in the district, 127 occurred in MPD Districts 5, 6, and 7; that is nearly 80% of all homicides took place in these three MPD Districts. *See also*, WASHINGTON POST Editorial, January 11, 2019 ("Most of the killings are concentrated — as long has been the case — in the city's poor, struggling neighborhoods; Wards 7 and 8 are the epicenter of violence that mainly affects young black men.") Additionally, in 2018, approximately 65% of all firearms recovered in the District of Columbia were recovered in those districts: (1) the Fifth District had 261 gun recoveries, (2) the Sixth District had 407 gun recoveries, and (3) the Seventh District had 595 gun recoveries.[4] Thus, the USAO determined to modify its charging policy with respect to felon-in-possession cases arising in the Fifth, Sixth, and Seventh Districts. Although the USAO had planned to phase-in other police districts over time, as of the submission of this declaration, the modified charging policy still only covers firearm arrests made in the Fifth, Sixth, and Seventh Districts. We do, however, on an *ad hoc* basis continue to prosecute violations of §

---

[4] The crime statistics cited in this paragraph were derived from publically available MPD data.

922(g) that occur in the other police districts, and we continue to evaluate the most effective ways to combat violent crime, including an assessment of which felon-in-possession cases should be prosecuted in the district court.

10. Since modifying its approach to prosecuting felon-in-possession cases, the USAO has regularly reassessed it. In December 2019, approximately ten months after modifying the approach, then-U.S. Attorney Liu gathered data to determine what, if any, changes could be made to better effect the Office's public-safety goals. Similarly, in February 2020, then-U.S. Attorney Shea considered changes to the modified charging approach. Additionally, in June 2020, a Working Group of USAO-DC Black AUSAs asked the current Acting U.S. Attorney to end or amend the felon-in-possession initiative, and he is considering this request. In sum, the USAO's charging policy for felon-in-possession cases will continue to be evaluated and changed as appropriate.

### IV.     Modified Charging Policy

11. On February 1, 2019, the USAO instituted the following policy: if an individual who had been convicted of a felony was found to be in possession of a firearm in Police District 5, 6, or 7 and he had not committed any additional offenses (a so-called "stand alone crime"), the case would be charged in district court as a § 922(g) offense. (Such a case could, however, still be brought in the Superior Court, if the Superior Court Division determined that that was an appropriate action. And this has been done.) It was a prospective modification. In other words, existing cases that may have met these criteria were not transferred to district court from Superior Court. To be sure, other violations of § 922(g) were prosecuted both before and after the modification of the USAO's charging policy, but they were not a product of the change in charging policy. Charging decisions in those cases were made based on an evaluation of the specific

circumstances of each case. The modified charging policy was intended to supplement – not replace – pre-existing practices regarding the prosecution of violations of § 922(g).

### V. Implementation of the Modified Charging Policy

12. To implement the modified charging policy, a number of logistical issues had to be resolved. VCNT had to increase its attorney and support staff. Additionally, VCNT had to develop intake protocols to implement the modified charging policy, while meeting court deadlines for presenting complaints and for arraignments. Once these tasks were completed, the modified charging policy took effect on February 1, 2019.[5] As of that date, VCNT prosecutors began carefully reviewing any arrest of a felon, who possessed a firearm, that occurred in the Fifth, Sixth, or Seventh District and the arrest involved only the possession of a firearm – a so-called "stand alone" gun case. Among other things, the prosecutors carefully review relevant body worn camera footage and interview law enforcement and other witnesses. The review focuses on identifying any search and seizure issues, proof issues, and potential credibility issues. If the matter constitutes a qualifying offense, these arrests are either charged as violations of § 922(g) or generally declined. This rigorous process has resulted in the declination of almost half the arrests presented: Between February 1, 2019 and February 1, 2020, VCNT AUSAs reviewed 253 arrests for potential § 922(g)(1) charges and sought a complaint in only 129 of those arrests.

13. During the first eleven months following the modification of our firearms charging policy (from February 1 to December 31, 2019), 105 matters reflecting a "stand alone" violation of § 922(g)(1) were charged in district court – 100 of which were brought pursuant to the modified charging policy. During the same time period, 134 "stand alone" violations of D.C. Code § 22-4503(a)(1) were brought in the Superior Court.

---

[5] Prior to this start date, the USAO office met with the District Court judges and representatives of the Federal Public Defenders Service to outline the parameters of the policy.

14. FBI agents routinely accompany MPD's Gun Recovery Unit, and a FBI agent is assigned to nearly every felon-in-possession case that arises from the modified policy. Specifically, the FBI has been directly involved in the investigation of over 100 felon-in-possession cases brought since February 1, 2019. This is very beneficial because an MPD detective is usually not assigned to investigate a felon-in-possession case, so follow-up investigation is difficult to accomplish. An FBI agent was assigned to Reed's case. Additionally, the Bureau of Alcohol Tobacco, Firearms, and Explosives (ATF) detailed an attorney to VCNT to assist with the prosecution of § 922(g) violations.

## VI. Non-modified-charging-policy Cases

15. Simmons's case predates the modified charging policy. On Thursday, November 15, 2018, Simmons, who had previously been convicted of a felony, was arrested by MPD, while in possession of a firearm. On November 16, 2018, the USAO charged Simmons with violating D.C. Code § 22-4503(a)(1), and he was arraigned in Superior Court. The government's request for a 3-day hold was granted and the matter was scheduled for a detention/preliminary hearing on November 19, 2018. Also, on November 16, 2018, Chief Newsham sent a letter to the United States Attorney, in which he stated: "We have long agreed that to reduce gun violence, we must deal more effectively with the people most likely to commit crimes with guns. An individual like Mr. [Simmons], who has already been convicted of multiple felony offenses and then chooses to possess a firearm illegally shows a clear disregard for the law and poses a higher risk for District residents." (Newsham 11/16/18 Letter Attached) In light of Chief Newsham's letter, the then-Principal Assistant United States Attorney directed VCNT to review Simmons's case for possible prosecution. ATF also referred the matter to VCNT for prosecution. In light of Simmons's extensive criminal history, to include a conviction for an assault involving a firearm, on the

afternoon of November 16, VCNT decided to charge Simmons with violating § 922(g). The district court grand juries were not sitting the week of November 19, 2018. Accordingly, on Monday, November 19, a VCNT prosecutor presented Simmons's case to a Superior Court grand jury and sought an indictment charging Simmons with violating § 922(g). The grand jury returned that indictment the same day.[6] Thereafter, on January 25, 2019, at the government's request the Superior Court dismissed Simmons's pending D.C. Code complaint. Inasmuch as this case arose prior to February 1, 2019, it was not brought pursuant to our modified charging policy.

16. Likewise, the *Fuentez* (incident date 11/21/17); *Wilkins* (incident date 10/31/18); *Mayes* (incident date 12/30/18); *Jones* (incident date 12/30/18); *Bellamy* (incident date 12/31/18); and *Pitts* (incident date 1/18/19) matters all occurred before February 1, 2019.[7] Accordingly, they too were not a product of our modified charging policy. Instead, each of these cases was individually evaluated to determine if it should be brought in district court.

I declare under penalty of perjury, on July 3, 2020, that the foregoing information is true and correct to the best of my information and belief.

/s/ John Crabb Jr.
John Crabb Jr.
Assistant U.S. Attorney

---

[6] The Superior Court grand jury returned the indictment pursuant to its authority under D.C. Code § 11-1916(a).

[7] These cases are cited in Reed's brief at pp. 54-55 & nn.46-47.



**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**METROPOLITAN POLICE DEPARTMENT**

November 16, 2018

Jessie K. Liu
United States Attorney
For the District of Columbia
555 4th Street, NW
Washington, DC 20530

Dear United States Attorney Liu:

I am writing to you concerning the recent arrest of Bernard Franklin Byrd (AKA Jarome Franklin Simmons) on November 15, 2018 (CCN 18-194-571).  Mr. Byrd, a previously convicted felon, was subsequently charged with Felon in Possession as he was in possession of a Glock 23 .40 caliber semi-automatic pistol at the time of his arrest.  Additionally, the firearm's magazine contained 12 rounds of ammunition, in violation of D.C. Code § 7-2506.01.b.  Mr. Byrd was also charged with resisting arrest after engaging in a struggle with the arresting officers in an attempt to flee the scene to avoid apprehension.  His most recent arrest, along with his long history of repeat criminal behavior, clearly indicates that he continues to pose a significant danger to the safety and security of those in the community.

Mr. Byrd possesses a lengthy criminal history, to include three previous felony convictions.  In July 2006, he pleaded guilty to Possession with the Intent to Distribute a Controlled Substance (Case # 2006 CF2 013389).  In August 2005, he pleaded guilty to UCSA Distribution of Cocaine (Case # 2005 FEL 004374).  In July 2007, Mr. Byrd pleaded guilty to Felony Contempt (Case # 2007 CF2 017716) after violating a Stay Away Order issued in Case # 2006 CF2 013389.  In 2007, multiple bench warrants were issued for Mr. Byrd for Failure to Appear in D.C. Superior Court Case # 2007 CF2 017716 and 2007 CF2 017710.  Additionally, in 2017, Mr. Byrd was convicted in Montgomery County Circuit Court of Second Degree Assault and Gun on Person in Case # 114447C.  Mr. Byrd is currently under maximum supervision by the Court Services Offender Supervision Agency until May 26, 2019.  Based on his criminal history, it is clear that Mr. Byrd poses a substantial danger to the community and should be detained pending trial.

We have long agreed that to reduce gun violence, we must deal more effectively with the people most likely to commit crimes with guns. An individual like Mr. Byrd, who has already been convicted of multiple felony offenses and then chooses to possess a firearm illegally shows a clear disregard for the law and poses a higher risk for District residents. Please let me know should you or your staff have any questions or require any additional information as your office seeks pretrial detention in this case.

Sincerely,

*[signature]*

Peter Newsham
Chief of Police